UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CESAR GALLIGANI, | : | |
| Plaintiff | : | NO.: 1:10-CV-01136 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| NORTHERN YORK COUNTY | : | |
| REGIONAL POLICE DEPARTMENT | : | |
| and MARK E. BAKER, | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

Pursuant to an Order entered on April 11, 2011 (Doc. 43), Honorable Christopher C. Conner referred defendants' motion to dismiss (Doc. 34) to the undersigned Magistrate Judge for the purpose of preparing a Report and Recommendation.

**I. Background**

Plaintiff Cesar Galligani's claims arise out of the conduct of defendants Northern York County Regional Police Department (the Department or Northern York RPD) and its employee Officer Mark E. Baker following charges by Galligani's wife that he raped her. He seeks to hold defendants liable for malicious prosecution, conspiracy to maliciously prosecute, negligence, and various violations of the Fifth and Fourteenth Amendments.

*(A) Facts of the case*

Galligani, an adult resident of York County in the Commonwealth of Pennsylvania, married Jennifer Parsons Galligani on May 20, 1999. (Am. Compl. ¶¶ 1, 4,

Doc. 32.) The Galliganis separated on June 24, 2007. (*Id.* ¶ 4.)

On January 31, 2008, Jennifer called the police and claimed that Galligani had raped her. (*Id.* ¶¶ 5, 7(a).) Two police departments were involved in the investigation: the York Area Regional Police Department (YARPD) and defendant Northern York RPD. (*Id.* ¶ 6.)

YARPD took the complaint call and conducted the initial intake report on January 31. (*Id.* ¶ 7(a).) Following Jennifer's filing of charges on February 7, 2008, YARPD obtained on February 9 a search warrant for Galligani's apartment. (*Id.* ¶¶ 5, 7(b).) The YARPD officers executing the warrant were looking for a tape recorder and a gun that Jennifer had said Galligani owned, but they found no tape recorder, no gun, and no other evidence that supported Jennifer's allegations. (*Id.* ¶¶ 7(c), (d).) YARPD also administered a medical rape kit, which tested negative. (*Id.* ¶ 7(e).) On April 18, YARPD administered a polygraph test to Galligani after he volunteered to take one; he passed. (*Id.* ¶¶ 7(f), 14.) YARPD ultimately found the allegations against Galligani to be unsubstantiated and groundless, and never initiated charges against him.

Northern York RPD interviewed Jennifer about her allegations on February 7, 2008. (*Id.* ¶ 8(a).) Although the Department did not obtain a search warrant for Galligani's apartment, its officers accompanied the YARPD officers in excecuting the YARPD warrant. (*Id.* ¶¶ 8(b), (c).) The Department did not issue a report of their search of Galligani's apartment and did not report finding any evidence in the investigation. (*Id.* ¶ 8(d).)

On an unspecified date, Northern York RPD filed numerous charges in connection with Jennifer's allegations of January 31, 2008: two counts of harassment (harassment by lewd communication and harassment by course of conduct with no legitimate purpose), felony stalking, unlawful use of a computer, intercepting communications, and disclosure of intercepted communications. (*Id.* ¶ 8(e).) Also on an unspecified date, the Department

seized Galligani's computer and Blackberry, which contained "electronic communications documenting the personal and sexual nature" of his marital relationship. (*Id.* ¶ 12.) The Department "kept this information in their possession for over a year." (*Id.*)

The complaint lists a number of things that the Northern York RPD did not do before filing charges. The Department did not "confer with YARPD's investigation or their determination of unsubstantiated allegations"; they did not wait for the results of the rape kit; and they did not wait for the results of Galligani's voluntary polygraph test. (*Id.* ¶¶ 9–11.)

Detective Hoppel of YARPD told Jennifer that if Galligani passed the polygraph test, she would be arrested for the false allegations. (*Id.* ¶ 16.) At some point in time identified only as "later" (but presumably before Galligani passed the polygraph test, because the complaint does not suggest that Jennifer was ever arrested), Jennifer requested withdrawal of all charges against her husband, posing her request to defendant Officer Mark E. Baker of the Northern York RPD and to York County's Assistant District Attorney Connolly. (*Id.* ¶ 17.) After Galligani passed the polygraph test, Detective Hoppel or ADA Connolly "required" Jennifer to sign a sworn declaration admitting that her allegations of rape were untrue. (*Id.* ¶ 18.)

On March 27, 2008, which the ordering of material in the complaint suggests is after Jennifer requested withdrawal of the charges against Galligani, Department officers arrested and jailed Galligani on charges of harassment, stalking, unlawful use of a computer, intercepting communications, and disclosure of intercepted communications. (*Id.* ¶ 23.) In pursuing and making an arrest on the charges against Galligani, the Department failed to consider or disregarded the sworn statement from Jennifer, the results of Galligani's polygraph test, or the direct requests from Jennifer to withdraw the charges. (*Id.* ¶ 24.) Galligani spent a little over nine hours in jail before being released on

his own recognizance. (*Id.* ¶ 23.)

Between April and December 2008, Jennifer made several more requests to Northern York RPD and the York County District Attorney's Office to drop the charges against Galligani, including phone calls to Officer Baker of the Northern York RPD and a handwritten letter to the District Attorney on March 30, 2009.[1] (*Id.* ¶ 25.)

On December 2, 2008, Galligani and his wife Jennifer appeared before Magisterial Judge Shoemaker. (*Id.* ¶ 26.) Jennifer again requested that all charges be dropped against her husband. (*Id.*) Responding to Jennifer's request, Officer Baker told her not to worry about her husband losing his job over a harassment charge.[2] (*Id.* ¶ 26(a).) Northern York RPD did drop all charges but the charge of harassment by lewd communications, a charge that the Department maintained because "they had to charge him with something." (*Id.* ¶ 27(b).) Judge Shoemaker made a plea offer of $50 for a plea of guilty to the harassment charge, which Galligani refused. (*Id.* ¶ 27(a).)

Galligani's attorney, Harry Ness, suggested that he proceed with the pending charge under Pennsylvania's Accelerated Rehabilitative Disposition (ARD) program. (*Id.* ¶ 28.) *See also* 234 Pa. Code §§ 300, 310 (West 2011) (describing ARD and the procedure in summary cases). Galligani was hesitant, but in December 2008, Attorney Ness convinced him that he should proceed with the ARD program. (Am. Compl. ¶¶ 29, 29(a).) Attorney Ness entered an appearance of ARD application on December 17, 2008. (*Id.* ¶ 29(b).) In January 2009, Galligani changed his mind, opting to reject the ARD offer and maintain his innocence of the harassment he was charged with. (*Id.* ¶ 29(c).)

On or about July 29, 2009, Galligani appeared pro se before the Honorable

---

[1] March 30, 2009, is not, of course, between April 2008 and December 2008, but thus are the facts stated in the complaint.

[2] The complaint is ambiguous as to whether Officer Baker's remark was made during or following the hearing on December 2.

4

Gregory Snyder at an ARD acceptance hearing and withdrew his ARD application. (*Id.* ¶ 29(d).)

In August 2009, Galligani's job as an airline pilot was affected when his CANPASS[3] privileges were revoked and cancelled because of the pending harassment charge against him. (*Id.* ¶ 26(b).)

On Octobert 20, 2009, the York County District Attorney abandoned prosecution against Galligani and the charges against him were terminated in his favor. (*Id.* ¶ 30.)

*(B) Procedural history*

This case began on May 26, 2010, when plaintiff filed his original complaint. (Doc. 1.) In addition to Officer Baker and the Northern York RPD, the original complaint also named the District Attorney's Office of York County and York County District Attorney H. Stanley Rebert as defendants. (*Id.*) Some months after the defendants had, in the aggregate, moved to dismiss through the filing of two motions (Docs. 4, 9), plaintiff filed an amended complaint (Doc. 32) on November 16, 2010, that included claims only against Officer Baker and the Department. The remaining defendants filed another motion to dismiss on December 2, 2010. (Doc. 34.) Defendants filed a brief in support (Doc. 36) and plaintiff filed a brief in opposition (Doc. 40). All filing deadlines having passed, the pending motion is ripe for adjudication.

**II. Standard of Review**

---

[3]"CANPASS is a series of Canada Border Services Agency (CBSA) programs that expedites the border clearance process for frequent, low-risk, pre-approved travellers into Canada." Canada Border Servs. Agency, "Individuals—CANPASS," http://www.cbsa-asfc.gc.ca/prog/canpass/menu-eng.html (last visited on Apr. 21, 2011).

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pleaded facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989).

In 2007, the Supreme Court abrogated its longstanding decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As a result of *Twombly*, plaintiffs were required to nudge their claims "across the line from conceivable to plausible." *Id.* at 570. To state a claim that satisfies Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n.3). According to this standard, a court may dismiss a complaint if it fails to

6

"contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Moreover, the Court's more recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), held that the pleading requirements of Rule 8 mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

### III. Discussion

Defendants have moved for dismissal of plaintiff's malicious prosecution claim against the Department under 42 U.S.C. § 1983; the conspiracy claim under 42 U.S.C. § 1985; and the negligence claims against both defendants. Defendants also argue that Baker is entitled to qualified immunity. Each issue will be discussed in turn.

#### (A) Malicious prosecution under § 1983

Plaintiff alleges that he was subject to malicious prosecution and harmed by both the Department and actions that Baker took in his official capacity.

##### (1) Merger of claims

When a public servant is sued "in his official capacity," a judgment against him "imposes liability on the entity that he represents provided . . . [that] the public entity

received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). An official-capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Accordingly, a suit against a police officer is no different from a suit against the police agency itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Monell*, 436 U.S. 690 n.55) (explaining that a suit against a state official is equivalent to a suit against the State itself); *id.* at 71 (holding that officials acting in their official capacities are not "persons" under § 1983).

Because plaintiff has claimed for malicious prosecution under § 1983 against Baker in his official capacity, and the Department, being also a party to this action, has received notice and an opportunity to respond, this claim merges with the claim against the Department. It is therefore recommended that the malicious-prosecution claim against Baker be dismissed.

(2) Background on § 1983

Section 1983 creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2011). Recovery under § 1983 requires proving that "a person

acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Because the actions in question in this case are actions by police officers in the course of their duties, there is no dispute that defendants were "acting under color of state law."

### (3) Municipal "policy or custom"

#### (a) Applicable legal standard

A municipality cannot be held liable for the acts of its agents or employees under § 1983 based on a respondeat superior theory. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). To support liability under § 1983, a plaintiff must prove that the injuries alleged in the complaint were the result of a municipal "policy or custom." *Id.* at 694.

Plaintiff makes his argument based on the Department's alleged failure to train its officers. Under § 1983, a plaintiff can make out an actionable municipal policy by showing that "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Establishing liability under a failure-to-train theory is "difficult." *Reitz v. County of Bucks*, 124 F.3d 139, 145 (3d Cir. 1997). A § 1983 claim against a municipality is "at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citing *Tuttle*, 471 U.S. at 822–23). Merely identifying "conduct properly attributable to the municipality" is not enough; the plaintiff must show that the municipality, "through its *deliberate* conduct, . . . was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). If the basis

9

of the complaint is not direct injury by the municipality but conduct of an employee caused by the municipality, the plaintiff will be held to "rigorous standards of culpability and causation" to ensure that the municipality "is not held liable solely for the actions of its employee." *Id.* at 405 (citing *Canton*, 489 U.S. at 391–92; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)) (alteration in original). In most cases, a plaintiff must show a "pattern of similar constitutional violations" by untrained employees in order to demonstrate deliberate indifference. *Id.* However, in a "narrow range of circumstances," "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Brown*, 520 U.S. at 409 (citing *Canton*, 489 U.S. at 390 & n.10). In this scenario that the Supreme Court hypothesized, the plaintiff would have to show deliberate indifference through the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation [would] violate citizens' rights." *Id.*

(b) Application to this case

With the complex and demanding failure-to-train standard in mind, the discussion turns to the facts and arguments that the parties present. Defendants rest their argument on the propositions that plaintiff failed to adequately plead any violations of his constitutional rights and that Officer Baker possessed no policymaking authority. Plaintiff responds by bringing up failure to train for the first time; the matter of training was never mentioned in the complaint. He argues that Officer Baker "lacked the specific tools" to

10

handle plaintiff's case and concludes that "there is a likelihood that the situation will recur" because "important factors were not considered in weighing the decision" to arrest plaintiff in 2008. (Doc. 40, at 7.)

Plaintiff's complaint, in its current form, is deeply flawed. The complaint seeks relief under § 1983 for malicious prosecution. It alleges "defective institutional policies and/or procedures with respect to the investigation, evaluation and decision to file" charges against plaintiff. (Am. Compl. ¶ 33.) In his brief opposing dismissal, plaintiff seems to have entirely shifted the basis for his claim, introducing new theories of recovery and making factual averments not included in the complaint: he argues based on failure to train, rather than defective policies; he claims violations of his Fourth, Fifth, and Fourteenth Amendment rights, rather than malicious prosecution; and he alleges that Officer Baker was involved in the search of plaintiff's home, arrested and detained plaintiff himself, and was actually the officer who headed the investigation into plaintiff—even though the complaint contains no such averments about Baker.

Even including in the analysis the averments in the opposing brief, plaintiff has failed to state facts sufficient to show the Department's deliberate indifference. Nowhere does plaintiff state whether Officer Baker was improperly trained or whether Officer Baker improperly trained someone else. Plaintiff says nothing about the details of the training program or what kind of training Officer Baker or other officers should have received. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (criticizing the case of a plaintiff seeking recovery on a failure-to-train theory for similar deficiencies). All plaintiff does is state that the charges against him were groundless, and then reason backward from there to the conclusion he considers obvious: that since the Northern York RPD, through Officer Baker, initated groundless charges against him, the Department's training program must have been flawed somehow. No such thing has been established. Plaintiff has alleged nothing to foreclose the possibility "that an otherwise sound

11

program" was simply "negligently administered" to or by Officer Baker. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). And as *Harris* explicitly stated: "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . ."*Id.* at 390.

Moreover, plaintiff's argument ignores crucial facts that he himself alleges. His theory is that the charges against him were baseless because (1) Jennifer's rape allegations were known to be baseless, (2) plaintiff passed a polygraph test, and (3) the Northern York RPD did not consult with YARPD before filing charges. Rape charges against plaintiff may have been baseless, but the fact is that plaintiff was never charged with rape. He was charged with felony stalking, unlawful use of a computer, intercepting communications, disclosure of intercepted communications, and two counts of harassment. The complaint states that when YARPD and Northern York RPD offcers searched plaintiff's apartment, they found no evidence in his apartment regarding allegations of rape, but the complaint does *not* state that they found no evidence that would support any of the other six charges against him. Rather, plaintiff admits in his complaint, with seeming unawareness of the implications, that his computer and Blackberry were seized as evidence. He does not suggest that this seizure was arbitrary, unconstitutional, or otherwise wrongful. Further, despite alleging that he passed a polygraph test, plaintiff does not mention what the polygraph test was about. The context of his averments about the polygraph test suggest that he was questioned on the rape charges, and there is no indication that the other charges ever came up when plaintiff was polygraphed. Plaintiff's failure-to-train theory is predicated on his claim that the charges against him were groundless—a claim that the allegations in his own complaint do not support.

(4) Violation of federal rights

The complaint states in Count I that the basis of plaintiff's § 1983 claim is malicious prosecution. Although malicious-prosecution claims under § 1983 have had a complex history in the Third Circuit, with lengthy periods of doubt as to what facts, if any, would establish a claim (*see generally Donahue v. Gavin*, 280 F.3d 371, 379–81 (3d Cir. 2002)), it seems clear by now that the modern malicious-prosecution claim has five elements. Proving malicious prosecution under § 1983 requires a plaintiff to show that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."[4] *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). The first four elements are identical to the elements of a malicious-prosecution claim under Pennsylvania state law. *Id.* at 186 n.2 (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

Plaintiff has clearly established three of the five elements. Defendants initiated criminal proceedings when they filed charges against him; the proceedings ended in plaintiff's favor when, on October 20, 2009, the York County District Attorney dropped all charges against plaintiff; and plaintiff suffered a "deprivation of liberty consistent with the concept of seizure" when he was arrested and briefly imprisoned on March 27, 2008.

What is not clear is that the proceedings were initiated without probable cause and

---

[4]As the *Donahue* court discussed, the current doctrinal basis for malicious-prosecution claims under § 1983 is the Fourth Amendment prohibition on unreasonable seizures. *Donahue*, 280 F.3d at 379–81, 383. Accordingly, plaintiff's attempts to ground a failure-to-train theory on violations of the Fifth and Fourteenth Amendments are disregarded. (*See* Doc. 40, at 3.)

that defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.

(a) Probable cause

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 89 (1964)). The constitutional validity of the arrest turns on "the facts available to the officers at the moment" that the challenged decision was made. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (quoting *Beck*, 379 U.S. at 96) (internal quotation marks omitted). The validity of the decision itself, on which the constitutional probable-cause analysis is based, is a matter of state law. *Myers*, 308 F.3d at 255 (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). In the context of a case like the one at bar, the officers need only "some reasonable basis" to believe that the person against whom charges were being filed has committed a crime. *Barna*, 42 F.3d at 809.

Although the question here is probable cause for initiating criminal proceedings rather than for making an arrest, the same principles of law apply. In order to meet the Rule 12(b)(6) standard on this element of his malicious-prosecution claim, plaintiff must have sufficiently alleged in his complaint that, at the time criminal proceedings were initiated, defendants had no reasonable basis to believe that he had committed a crime. As discussed in Part III.A.3.b *supra*, the complaint does not make such a showing. While accompanying officers from YARPD, the Northern York RPD officers seized plaintiff's computer and Blackberry and subsequently initiated six different charges against him. The complaint may have established that rape charges against plaintiff would have lacked probable cause, but it never mentions the basis, or a lack thereof, for the charges that were

actually brought against plaintiff. Merely asserting the conclusion that the charges were initiated without probable cause is insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

(b) Defendants' purpose in initiating proceedings against plaintiff

The complaint says nothing about defendants' purpose in initiating proceedings against him. It states that Northern York RPD's "supervisor(s) abused his/her position and power by establishing, accepting and employing the policies and procedures regarding domestic disputes" (Am. Compl. ¶ 36) and that Officer Baker disregarded the advice of YARPD and Jennifer and "failed to invoke the correct police procedures regarding domestic disputes" (*id.* ¶ 37). None of the complaint's allegations come any closer than that to describing defendant's purpose in charging plaintiff.

(5) Summation

The complaint does not make out a claim under § 1983 either for malicious prosecution or for failure to train. As to malicious prosecution, plaintiff has failed to allege that defendants lacked probable cause when they initiated proceedings against him and failed to allege that they did so with an improper purpose. As to failure to train, the complaint never discusses the matter, and consequently does not establish defendants' deliberate indifference to plaintiff's constitutional rights, thus failing to establish a municipal policy that was the "moving force" behind plaintiff's alleged constitutional deprivation. It is therefore recommended that plaintiff's claims under § 1983 be dismissed.

*(B) Conspiracy under § 1985; negligence*

In their motion to dismiss and brief in support, defendants argue that plaintiff's negligence claims and claims of conspiracy under 42 U.S.C. § 1985 should be dismissed. Plaintiff opposed neither argument in his brief in opposition. It is therefore recommended that plaintiff's negligence and § 1985 claims be dismissed.

### (C) Qualified immunity

Defendant has asserted the affirmative defense of qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The risk of losing this entitlement indicates the importance of resolving questions of qualified immunity as early as possible in the litigation.

Qualified immunity serves as a shield from suit if a defendant official could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the defendant possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641). Officials who "reasonably but mistakenly" conclude that their actions were lawful are still entitled to immunity. *Id.* This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

There are two inquiries that a court must make in determining whether a defendant is entitled to qualified immunity. One is whether the facts as alleged in the complaint make out a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second question is whether "the right was clearly established . . . in light of the specific context of the case." *Id.* Only the first of these two questions need be addressed here.

As detailed in Part III.A *supra*, the complaint does not make out a violation of a

16

constitutional right. Accordingly, defendant Baker is entitled to qualified immunity to claims being asserted against him in his individual capacity,[5] and it is therefore recommended that such claims against him be dismissed.

**IV. Conclusion**

Based on the foregoing discussion, it is recommended that defendants' motion to dismiss plaintiff's claims for malicious prosecution, conspiracy to maliciously prosecute, and negligence be GRANTED.

s/ William T. Prince  
William T. Prince  
United States Magistrate Judge

April 22, 2011

---

[5] It is worth noting that Count I of the complaint, containing plaintiff's § 1983 claim, does not actually include any allegations against Baker in his individual capacity.