## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CESAR GALLIGANI**                          **NO. 1:10-CV-1136**

**v.**                                                   **JUDGE CONNER**

**NORTHERN YORK COUNTY**          **MAGISTRATE JUDGE METHVIN**
   **REGIONAL POLICE DEPT.,**
**OFFICER MARK E. BAKER**

### REPORT AND RECOMMENDATION
### <u>ON MOTION TO DISMISS</u>
### (Doc. 61)

Cesar Galligani filed this civil rights action on May 25, 2010 (Doc. 1)[1] and thereafter filed an amended complaint on November 16, 2010 (Doc. 32) and a second amended complaint on September 15, 2011. (Doc. 59).[2] The second amended complaint alleges a constitutional violation, *to wit.*, malicious prosecution under 42 U.S.C. § 1983. Named as defendants are the Northern York County Regional Police Dept. and Officer Mark E. Baker.

---

[1] In addition to Officer Baker and the Northern Regional, the original complaint also named the District Attorney's Office of York County and York County District Attorney H. Stanley Rebert as defendants. These parties were not named as defendants in either of the subsequent amended complaints.

[2] By Order dated August 30, 2011, the court dismissed the claims of Galligani's amended complaint, with prejudice, but allowed him leave to amend. (Doc. 56)

2

Before the court is defendants' motion to dismiss.[3]  The motion has been referred to the undersigned for a report and recommendation and is now ripe for disposition.[4]

## FINDINGS AND RECOMMENDATIONS

### I. Background

For purposes of the motion to dismiss, Galligani's factual averments will be accepted as true. Galligani makes the following allegations in his second amended complaint:

Galligani is an adult resident of York County in the Commonwealth of Pennsylvania. (Amended Complaint, Doc. 59 ¶ 1). He and his wife, Jennifer Parsons Galligani, separated on June 24, 2007. (*Id*. ¶ 4). Defendant Northern York County Regional Police Department ("Northern Regional") is a police department and state government agency of the Commonwealth of Pennsylvania. (*Id.* ¶ 2).

---

[3] Defendants filed the motion to dismiss on September, 29, 2011, along with a supporting brief (Docs. 61, 62). Galligani filed a response to the motion (docketed as a reply brief) and a brief in opposition on October 13, 2011 (Docs. 63, 64), to which defendants filed a reply brief on October 17, 2011 (Doc. 65). Galligani filed a sur reply brief on November 2, 2011 (Doc. 67). In future filings, the parties need not include previously-filed documents in this case, such as the second amended complaint, as attachments to their submissions.

[4] On June 12, 2012, Judge Conner referred the pending motion to dismiss to undersigned. (Doc. 69).

3

Defendant Baker is a police officer in the Northen York Regional Police Department. (*Id.* ¶ 3).

On February 7, 2008, Jennifer filed rape charges against Galligani with the York Area Regional Police Department ("YARPD"). (*Id.* ¶¶ 5-6). Northern Regional was also involved in the investigation of the rape offense (*Id.* ¶ 8).

YARPD executed an affidavit of probable cause on February 8, 2009, detailing Jennifer Galligani's allegations of rape. (Doc. 64-3). Based on this affidavit, a search warrant was issued on February 9, 2009 and directed the search and seizure of "[b]edclothes to include blankets, sheets and pillow cases and any other miscellaneous items deemed to be related to a sexual assault." (*Id.*). YARPD, along with Northern Regional, conducted a search of Galligani's residence.[5] (Doc. 59, ¶ 9 (a)). YARPD ultimately found the rape allegations against Galligani to be unsubstantiated, and never initiated charges against him. (*Id.* ¶ 7(g)).

On February 10, 2008, Northern Regional sought and obtained its own search warrant on Galligani's residence and vehicle.  (*Id.* ¶ 9(b)). The warrant was based upon other allegations by Jennifer. (Doc. 62-1, Ex. C). While the amended

---

[5] Plaintiff contends the search was conducted on February 9, 2008, but defendants cite to a record ("Bates 11") which purportedly shows that search warrants from both jurisdictions were served and executed on February 11, 2008. (See Doc. 62, p. 5). "Bates 11" cannot be found in the record before the court, however. In any event, it is not necessary to resolve this issue for purposes of the instant motion.

4

complaint characterizes the later-filed charges as "in connection with the [rape]

allegations occurring January 31, 2008," (Doc. 59, ¶ 9(f)), the affidavit of probable

cause establishes that the separate warrant involved investigation of independent

complaints made by Jennifer on February 7, 2008. The affidavit of probable cause

in support of the search warrant states:

> On 2-7-08, this department, the Northern York County Regional
> Police Department received a complaint from Jennifer Galligani, a resident
> of Dover Township. Galligani provided a PFA that she obtained against her
> husband, Cesar Galligani. While she was here, I interviewed her as to the
> situation between her and her husband.
>
> Galligani advised that she separated from her husband in May of last
> year. In June, he moved out to his new address, *[redacted]* in York and she
> changed the locks on the house *[redacted]* in Dover. Galligani advised
> since he has moved out, he has tried to reconcile with her on numerous
> occasions.
>
> She stated since the separation, he began to contact her via phone and
> email and the intensity has picked up in recent months. He has sent emails
> to her accusing her of cheating on him and would make derogatory
> comments of a personal nature. She advised he would include names, such
> as "I know about Michael", to fish for a response. Galligani she (sic) has not
> been with another man since the separation. When he called her on the
> phone he state (sic) similar things.
>
> Galligani advised that she is a travel nurse working contracts at local
> area facilities. She advised her husband, on occasion would come to see her
> and want a tour of the facility. When she would deny the request, he would
> make comments like "Why ... does your boyfriend work here?" She advised
> on one occasion a couple months ago, she received a phone call on her cell
> phone while she was working and it was her husband. She was told to look
> outside and she did, but didn't see him. He asked where she was parked and

she told him. He then stated "This isn't where you were parked the other day", indicated (sic) that he had been checking the parking lot on pervious days for her vehicle. She also stated, on occasion, she would be on her way to work and get contacted to change her work location for the day by her company. She stated she might receive a phone call from her husband later asking why she didn't go to work that day, indicating he was checking the parking lot again.

Galligani stated she and her husband share custody of their 2 year old daughter [G. G.]. Galligani advised during some of the times when there was a switch of custody, her husband would meet her at her home in Dover. When she would arrive, he was already there. After the exchange took place, Galligani advised that she would go into her house and find a door unlocked, or something appeared disheveled. Items like paperwork would be missing or family photos. Since Galligani changed her locks on the house in June when he left, she thinks he was entering through the garage because he had an extra garage door opener.

Galligani advised in (sic) another occasion, she was at his house exchanging custody of their daughter and observed a bag he had packed for his work. In the bag were several pairs of her underwear in zip lock bags. Galligani advised she didn't know where or how he got her underwear and she stated it was disconcerting.

On one occasion while she was at his house during a custody exchange, he had a knife on the counter. Her husband put his hand on it and stated "you know what this is for, right?" She advised the way he stated it, it was a threatening manner. She also advised he told her he bought a gun recently.

Galligani advised that she does extra work on the side with patients that need home care. One of the patients is Travis Oldhauser of Manchester Township. She advised Oldhauser is a paraplegic that she tends to after her normal work hours. Galligani, last week on (sic) possibly Wednesday, her (sic) husband confronted her about a possible affair with Oldhauser. Galligani advised he began to provoke her into an argument during which she stated she was not having an affair with Oldhauser. Galligani's husband

6

then asked to use the bathroom. Since Galligani knew he had taken her underwear in the past, she allowed him for a few minutes, then went into the bathroom to check on him. Galligani's husband was caught in her dirty laundry hamper with a pair of her underwear. Galligani promptly told him to leave. As he was exiting the house, Galligani advised she saw him take a tape recorder from his pocket and snicker.

Galligani advised she was told by Oldhauser that he received a phone call in the evening hours some time last week. Olhouser advised he didn't pick up the phone and let the answering machine get it. On the machine was Galligani's voice making statements like "I never had an affair with Travis". Galligani advised she never called Oldhauser and it must have been her husband recording her during there (sic) argument.

The final incident between Galligani and her husband led to an alleged assault which occurred at his house last week before he left for his business. The said incident is being investigated by the York Area Regional Police Department.

Galligani is concerned because the emails, call and now assault have been increasingly more aggressive in nature. In addition, the incidents prior (sic), it was apparent Galligani's husband was following her on numerous occasions due to the knowledge of her vehicle parking location and her not being a[t] work on occasions.

(Doc. 64-4). Based upon this affidavit, a search warrant was issued on February 10, 2008 by York County Magisterial District Judge Nancy L. Edie, and a search was thereafter conducted. (Doc. 62-1, Ex. C).[6]

Northern Regional subsequently filed numerous charges against Galligani, including felony stalking, harassment by lewd communication, harassment by

---

[6] See *fn.* 5, *supra* regarding date of execution of the warrant.

course of conduct with no legitimate purpose, unlawful use of a computer, intercepting communications, and disclosure of intercepted communications. (*Id.* ¶ 9(f)).

Galligani alleges that Northern Regional failed to act reasonably prior to filing the charges, including the following: 1) failure to confer with YARPD's investigation or their determination of "unsubstantiated" allegations; 2) failure to wait for the results of the rape kit, which came back negative; and 3) failure to wait for the results of Galligani's voluntary polygraph test, which he passed. (Doc. 59, ¶ 10).

Galligani contends that on  March 27, 2008, despite knowledge that his wife had signed an affidavit admitting her rape allegations were false, that he had passed the polygraph, and that YARPD dropped all charges, Northern Regional officers arrested and jailed Galligani on the stalking and other charges. (*Id.* ¶ 15). On December 2, 2008, Jennifer Galligani and plaintiff both appeared before Magisterial Judge Shoemaker and Jennifer requested that all the Northern Regional charges be dropped against plaintiff. (*Id.* ¶ 18). At the hearing, Northern Regional dropped all charges except for the charge of harassment by lewd communications. (*Id.*). On December 17, 2008, Galligani's attorney filed on behalf of Galligani an application for Accelerated Rehabilitative Disposition (ARD) As to the harassment

8

charge. ARD is a pretrial probationary program of the Commonwealth of

Pennsylvania.[7] In January, 2009, however, Galligani changed his mind and decided

to reject the ARD offer and maintain his innocence on the harassment charge. (*Id.* ¶

20(c)). He attempted to communicate this desire to his attorney. (*Id.*). On or about

July 29, 2009, Galligani appeared *pro se* before the Honorable Gregory Snyder at

an ARD acceptance hearing and withdrew his ARD application. (*Id.* ¶ 20(d)).

On October 20, 2009, the York County District Attorney abandoned

prosecution of the remaining charge of harassment by lewd communication against

---

[7] The Supreme Court of Pennsylvania has described the ARD program as follows:

> ARD, accelerated rehabilitative disposition, is a pretrial disposition of certain cases, in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes.

> Under the ARD rules, which this Court created in 1972 pursuant to our authority to supervise the lower courts, the district attorney has the discretion to refuse to submit a case for ARD, and if the case is submitted for ARD, the court must approve the defendant's admission. These rules, which appear at Pa. R.Crim. P. 175–185, also provide that the defendant must agree to the terms of the ARD, and that after he has completed the program successfully, the charges against him will be dismissed, upon order of court. If he does not complete the ARD successfully, he may be prosecuted for the offense with which he was charged. The district attorney's utilization of ARD is optional under the rules.

*Commonwealth v. Lutz*, 508 Pa. 297, 495 A.2d 928, 931 (Pa.1985).

Galligani. (*Id.* ¶ 21). The present action followed. Galligani seeks, *inter alia.*, compensatory and punitive damages and attorneys' fees.

## II. Issues Presented

Defendants contend that the second amended complaint should be dismissed on the following grounds:

    A.    Galligani has failed to state a claim for malicious prosecution.

    B.    Galligani's allegations fail to support a *Monell* claim.

## III. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322–23 (2011).

The complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

question is not whether the plaintiff will ultimately prevail, but whether the

"complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*,

131 S. Ct. 1289, 1296 (2011)(citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506,

514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the claim

showing that the pleader is entitled to relief," a plaintiff must do more than present

"bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs.*

*Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide
> the "grounds" of his "entitle[ment] to relief" requires more than labels
> and conclusions, and a formulaic recitation of a cause of action's
> elements will not do. Factual allegations must be enough to raise a
> right to relief above the speculative level on the assumption that all of
> the complaint's allegations are true.

*Twombly*, 550 U.S. at 545 (citations omitted). Plaintiffs must nudge their claims

"across the line from conceivable to plausible." *Id.* at 570. *See also Phillips,* 515

F.3d at 232.

A plaintiff "armed with nothing more than conclusions" is not entitled to

discovery. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009).

Consequently, "where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not

11

'show[n]' — 'that the pleader is entitled to relief,'" and the complaint should be

dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence" supporting the

plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550

U.S. at 557–58).

The Third Circuit has outlined a two-part analysis that courts should utilize

when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements

of a claim should be separated. In other words, while courts must accept all of the

complaint's well-pleaded facts as true, they may disregard any legal conclusions.

Second, courts then decide whether the facts alleged in the complaint are sufficient

to demonstrate that the plaintiff has a "'plausible claim for relief.'" *Id.* at 210

(quoting *Iqbal*, 129 S. Ct. at 1950). That is, a complaint must do more than allege

the entitlement to relief; its facts must show such an entitlement. *Id.* at 211.

## IV. Discussion

The undersigned has considered documents in addition to the second amended complaint. Generally, a 12(b)(6) motion must be decided only upon the allegations set forth in the complaint, without considering any outside documents or available facts. If, on a 12(b)(6) motion to dismiss, a party "presents matters outside the pleadings, the district court must convert the motion to dismiss into a motion for summary judgment, and give all parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56." *In re Bayside Prison Litig.*, 190 F. Supp.2d 755, 760 (D.N.J.2002). However, conversion to a motion for summary judgment is not required when a district court considers the following documents: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; (4) matters integral to or upon which plaintiff's claim is based." *In re Bayside*, 190 F. Supp.2d at 760 (internal citations omitted). A court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Third Circuit allows district courts to consider such documents because "neither party can claim prejudice or surprise by the court's reliance on the document." *Id. See also Lum v. Bank of Am.*, 361 F.3d

217, 222 n. 3 (3d Cir.2004) (considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.))

The affidavits of probable cause and the warrants issued thereon are not only integral to the second amended complaint but were also attached as exhibits to Galligani's brief in opposition to the motion to dismiss and are undisputedly authentic. Consequently, consideration of such documents is not unfair to Galligani nor does it convert the present motion onto one for summary judgment.

*A. Malicious Prosecution*

A Fourth Amendment claim of malicious prosecution under §1983 requires proof of five elements:

    (1)    the defendant initiated a criminal proceeding;

    (2)    the criminal proceeding ended in his favor;

    (3)    the defendant initiated the proceeding without probable cause;

    (4)    the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

    (5)    the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Dice v. Johnson*, 711 F. Supp. 2d 340, 364-65 (M.D. Pa. 2010) (Caldwell, J.)

(quoting *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007)). Clearly the first and

14

fifth elements have been satisfied.[8] Defendants contend that Galligani is unable to

meet the other three elements of a malicious prosecution claim.

### 1.  Favorable Termination[9]

As to the second element, favorable termination, Galligani must establish

that the abandonment of the criminal charge against him acted as an exoneration. In

effect, Galligani must show that the underlying criminal proceedings terminated in

a manner indicating that he was *innocent* of the charge of harassment by lewd

communication. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir.2009); *Donahue v.

Gavin*, 280 F.3d 371, 383 (3d Cir.2002). *See also Heck v. Humphrey*, 512 U.S. 477,

484(1994).

A plaintiff must demonstrate his innocence by showing that the prior case

was terminated in any of the following ways:

    (a)    a discharge by a magistrate judge at a preliminary hearing, or
    (b)    the refusal of a grand jury to indict, or
    (c)    the formal abandonment of the proceedings by the public prosecutor, or
    (d)    the quashing of an indictment or information, or
    (e)    an acquittal, or
    (f)    a final order in favor of the accused by a trial or appellate court.

---

[8] The fifth element is satisfied because Galligani has alleged, *inter alia*, that he was incarcerated. (Doc. 59 ¶ 25(e))

[9] Although an earlier Report and Recommendation stated that this element was satisfied, such a conclusion does not appear clear and requires further analysis.

*Donahue*, 280 F.3d at 383.

Here, the charge against Galligani was nolle prossed and he paid fees of

$692.84.  A grant of nolle prosequi is not synonymous with a favorable

termination. The Third Circuit has instructed that while "a grant of nolle prosequi

can be sufficient to satisfy the favorable termination requirement for malicious

prosecution, not all cases where the prosecutor abandons criminal charges are

considered to have terminated favorably." *Hilfirty v. Shipman*, 91 F.3d 573,

579–580 (3d Cir.1996). "A nol pros signifies termination of charges in favor of the

accused 'only when their final disposition is such as to indicate the innocence of

the accused.'" *Donahue*, 280 F.3d 371, 383 (3d Cir.2002) (*quoting* RESTATEMENT

(SECOND) OF TORTS: INDECISIVE TERMINATION OF PROCEEDINGS § 660, cmt. a).

*See also Hector v. Watt*, 235 F.3d 154, 156 (3d Cir.2000)(§1983 malicious

prosecution plaintiff "must be innocent of the crime charged in the underlying

prosecution.")

> "Even if the plaintiff in malicious prosecution can show that the
> defendant acted maliciously and without probable cause in instituting
> a prosecution, it is always open to the defendant to escape liability by
> showing in the malicious prosecution suit itself that the plaintiff was
> in fact guilty of the offense with which he was charged." PROSSER
> AND KEETON, *supra*, at 885 (citing RESTATEMENT OF TORTS § 657).
> This requirement can bar recovery even when the plaintiff was
> acquitted in the prior criminal proceedings, for a verdict of not guilty

16

only establishes that there was not proof beyond a reasonable doubt. *Id.*

*Id.*, 235 F.3d at 156.

The reasons for the nolle prosequi are not before the court. The record

shows that a judicial officer signed a search warrant based upon a showing of

probable cause. The probable cause finding was based upon a detailed description

of plaintiff's alleged threats and acts of harassment against Jennifer as contained

in the affidavit. Although plaintiff contends that Jennifer later appeared before a

magisterial judge and requested that the charges against plaintiff be dropped, this

retraction of abuse allegations against a spouse does not, in itself, establish

innocence. In the absence of any showing otherwise, plaintiff has not established

that the nolle prosequi was an exoneration "such as to indicate the innocence of

the accused." *Donahue*, 280 F.3d 371, 383 (3d Cir. 2002). Accordingly, plaintiff

has not satisfied this factor.

## 2. *Probable Cause*

"Probable cause exists if at the time of the issuance of the citations, 'the

facts and circumstances within [the defendant's] knowledge and of which [he] had

reasonably trustworthy information were sufficient to warrant a prudent man in

believing' a crime had been committed." *Anderson v. Mesure*, 394 F. App'x. 848,

850 (3d Cir. 2010) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). In

assessing probable cause, police officers are permitted to weigh evidence and make credibility determinations, even if those decisions later prove incorrect. *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). "The validity of the arrest does not depend on whether the suspect actually committed the crime" and his "later acquitt[al] of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). An officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir.), *cert. denied*, 519 U.S. 867 (1996); *Simkunas v. Tardi*, 930 F.2d 1287, 1292 (7th Cir.1991); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 n. 6 (11th Cir .1990); *Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir.1986).

The test for probable cause has both a subjective and an objective component. The subjective component requires that the defendant "honestly believe" that the accused committed the crime for which he was prosecuted, while the objective component requires that his belief be based upon "a reasonable ground of suspicion of guilt." *Neczypor v. Jacobs*, 169 A.2d 528, 531 (Pa. 1961) (emphasis added); *accord Gilbert v. Feld*, 842 F. Supp. 803, 815 (E.D. Pa.1993). The plaintiff bears the burden of proving lack of probable cause in a malicious

18

prosecution action. *Basile v. Township of Smith,* 752 F. Supp.2d 643, 665 (W.D.

Pa. 2010) (citing *Miller v. Pa. R. Co.*, 371 Pa. 308, 89 A.2d 809, 811 (1952)).

To establish a lack of probable cause, a plaintiff must demonstrate that the

totality of facts and circumstances were insufficient to warrant an ordinary,

prudent officer to believe that plaintiff had committed an offense. Such a showing

has not been made.

Galligani does not allege that there was insufficient evidence for an

ordinary, prudent law enforcement officer to believe a crime had been committed.

As noted above, the affidavit of probable cause in support of the search warrant set

forth in detail the acts which Galligani had allegedly committed against his wife,

including threatening behavior, stalking, and harassing phone calls and emails.

Galligani's wife informed police that Galligani was tracking her and her vehicle.

She also felt the behavior was escalating and she felt threatened. Galligani's

allegations— that Baker and Northern Regional were aware that his wife had

issued a sworn affidavit recanting her allegations of rape, that he had passed a

polygraph test, and that YARPD decided there was insufficient evidence to bring

charges rape charges—have no bearing on the charges filed by Northern Regional,

which were premised on separate and distinct allegations against Galligani.

Accordingly, even viewed in the light most favorable to Galligani, his allegations

fail to aver facts sufficient to support a claim that defendants lacked probable cause in arresting him.

### 3. Malice

The fourth element of a malicious prosecution claim requires a showing that "the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice." *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir.1996). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose or the reckless and oppressive disregard of the plaintiff's rights." *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir.1988). *See also Henderson v. City of Philadelphia,* Civ. A. No.10-7018, 2012 WL 1071225, *4 (E.D. Pa. March 30, 2012).

As noted above, Galligani alleges that Jennifer Galligani appeared before a Magisterial Judge on December 2, 2008 and requested that all of the Northern Regional charges be dropped against plaintiff. (Doc. 59, ¶ 18). Northern Regional dropped all charges but the harassment charge at that hearing. Plaintiff alleges:

> b.   When asked why charges had been sustained for such a long period of time by the Magistrate Judge, Northern Regional stated *in the presence of Judge Shoemaker* that they had to charge Plaintiff with something.

(*Id.*, ¶ 18(b)).

20

Plaintiff's complaint does not identify the alleged speaker in court who answered the judge's question, other than to say it was "Northern Regional." Presumably, the prosecutor would be answering questions of the court, and not a representative of the police force. Assuming, for purposes of the motion, that the speaker was a representative of Northern Regional, plaintiff's characterization of the statement as evidence of malice constitutes nothing more than a label, a "bald assertion" which is insufficient to cross the court's threshold. *In re Burlington,* 114 F.3d at 1429-30. Considering the extensive nature of the original charges as documented in the affidavit in support of the search warrant (see pp. 4-6, *infra*), the cited statement — that "they had to charge Plaintiff with something" — could indicate nothing more than that Northern Regional did not feel it appropriate to dismiss all charges solely on the basis of a retraction of domestic abuse by a spouse.

Galligani has failed to allege facts which, if proven, would establish that defendants lacked probable cause to arrest him. Accordingly, he has failed to state a claim for malicious prosecution and defendants' motion to dismiss should be granted on this issue.[10]

---

[10] To the extent Galligani attempts to challenge the legality of the seizure of items unrelated to the warrant premised upon the rape allegations, and occurring before a search

(continued...)

21

*B. Monell*

A municipality cannot be held liable for the acts of its agents or employees under § 1983 based on a respondeat superior theory. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). In *Monell v. Department of Social Services*, the United States Supreme Court declared that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). Thus, municipalities maybe sued under § 1983, with some limitations.

To support liability under § 1983, a plaintiff must prove that the injuries alleged in the complaint were the result of a municipal "policy or custom." *Id.* at 694. *See Reitz v. Bucks County*, 125 F.3d 139, 144 (3d Cir. 1997) ( "A public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. §1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy."). "A policy is an official proclamation or edict of a municipality, while a custom is a practice that is 'so permanent and well-settled as to virtually constitute law.'" *Crouse v. South*

---

[10](...continued)

warrant was issued on other allegations of harassment, such matters have neither been pled in the second amended complaint nor are they properly before the court.

22

*Lebanon Twp.*, 668 F. Supp. 2d 664, 675 (M.D. Pa. 2009) (Conner, J.) (quoting

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting, in turn,

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).

However, "[a] custom need not be 'formally approved by an appropriate decision-

maker,' but must be 'so widespread as to have the force of law.'" *Id.* at 675-76

(quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir.

2003) (quoting, in turn, *Board of County Com'rs of Bryan County, Okl. v. Brown*,

520 U.S. 397, 404 (1997)). Respondeat superior liability, based solely on the acts

of employees, in unavailable. *Monell*, *supra* at 691.

It is insufficient for §1983 liability to demonstrate that the municipality

employed the wrongdoer. *Monell*, 436 U.S. at 691. To establish municipal liability

pursuant to §1983, a plaintiff must identify the policy, custom or practice of the

municipal defendant that results in the constitutional violation. *Id*. at 690–91.

Because Galligani has not stated facts that support the absence of probable

cause regarding his malicious prosecution claim, he has failed to demonstrate the

deprivation of a constitutional right. Thus, Galligani's malicious prosecution claim

does not establish a constitutional violation upon which his *Monell* claim could

properly be premised. *See Morley v. Philadelphia Police Dept.*, No. 03-880, 2004

23

WL 1527829, *10 (E.D. Pa. July 7, 2004). A claim of municipal liability under *Monell* is not supported.

Consequently, it is recommended that motion to dismiss be granted on this issue.

**V. Recommendation**

For the foregoing reasons, it is respectfully recommended that defendants' motion to dismiss (Doc. 61) be granted and that the second amended complaint (Doc. 59) be dismissed with prejudice.

Signed on July 19, 2012.

_____

MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE