## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CESAR GALLIGANI,** | : | **Civil Action No. 1:10-CV-1136** |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **NORTHERN YORK COUNTY** | : | |
| **REGIONAL POLICE** | : | |
| **DEPARTMENT, and** | : | |
| **OFFICER MARK BAKER,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court in the above-captioned matter are plaintiff Cesar

Galligani's ("Galligani") objections (Doc. 59) to the Report and Recommendation of

Magistrate Judge Methvin, recommending dismissal of Galligani's malicious

prosecution claim.  Galligani filed objections to the Report and Recommendation

(Doc. 71), on August 10, 2012, and defendants filed a response (Doc. 73), on

August 16, 2012.  The matter has been fully briefed and is ripe for disposition.

I.   **Factual and Procedural History**[1]

Galligani is a resident of York County, Pennsylvania. (Amended Complaint, Doc. 59 ¶ 1).  Galligani and his wife, Jennifer, separated on June 24, 2007. Defendant Northern York County Regional Police Department ("Northern Regional") is a police department and state government agency, and defendant Baker is an officer working for Northern Regional.  (Id. ¶ 2, 3).

On February 7, 2008, Jennifer filed charges of rape against Galligani with the York Area Regional Police Department ("YARPD").  She alleged that, on January 31, 2008, at about 2:40 a.m., Galligani called her cell phone, asking her to come over to his home to help with their child, who was staying with him.  (Affidavit of Probable Cause, Doc. 64-3).  She alleged that, when she arrived, the apartment was dark, and when she entered the child's bedroom, Galligani assaulted her, forcibly removed her clothing, and raped her.  (Id.)  Based on these charges, a Detective with YARPD applied for a search warrant on February 8, 2008, which was granted on February 9, 2008, directing the search and seizure of "[b]edclothes to include blankets, sheets, pillow cases, and any other miscellaneous items deemed to

---

[1] Generally, courts may consider only the allegations contained in the complaint, attached exhibits, and matters of public record when considering a motion to dismiss.  In this case, neither party disputes the authenticity of the search warrants and accompanying affidavits of probable cause, and so it is proper for the court to consider them in its analysis.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that it is proper to consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").  As Magistrate Judge Methvin correctly noted, the reason for this is that "neither party can claim prejudice or surprise by the court's reliance on the document."  Id.

be related to a sexual assault." YARPD officers, along with Officer Baker, conduct

a search of Galligani's residence. The parties disagree as to whether the search

occurred on February 9, as Galligani alleges, or February 11. YARPD eventually

decided that the rape allegations were unsubstantiated, due at least in part to a lack

of direct medical evidence of rape, a lack of physical evidence found during the

February 9 search, Galligani's polygraph test, and Jennifer's recanting of her rape

accusation. (Doc. 59, ¶ 7).

On February 10, 2008, Officer Baker sought and obtained a search warrant

for Galligani's residence and vehicle. (Doc. 59, ¶ 9(b)). Galligani characterizes this

warrant as being in connection with the rape allegations, but the affidavit of

probable cause is focused almost entirely on separate allegations of harassment and

stalking, made by Jennifer in a February 7 complaint. The affidavit only makes a

passing reference to a sexual assault allegation that was under investigation by

YARPD. A York County Magisterial District Judge approved the warrant on

February 10, 2008, though as will be discussed in detail *infra*, Galligani argues

strenuously that this warrant was based upon evidence illegally seized during the

February 9 search.

Baker seized Galligani's Blackberry and laptop, a notebook with phone

numbers, and a variety of files. (Doc. 59, ¶ 9). Northern Regional subsequently filed

a number of charges against Galligani, including one count of harassment by lewd

communication and one count of harassment by course of conduct with no

3

legitimate purpose, felony stalking, unlawful use of a computer, intercepting communications, and disclosure of intercepted communications.  (Id. 59, ¶ 9).

Galligani alleges that, on March 27, 2008, despite knowing that Galligani had been cleared of all rape charges, Northern Regional arrested and jailed him on the stalking charges.  On December 2, 2008, Galligani and Jennifer appeared before Magisterial Judge Shoemaker, wherein Jennifer requested that all charges be dropped.  At that hearing, Northern Regional dropped all charges, except the charge of harassment by lewd communications.  Galligani alleges that, when asked by Judge Shoemaker why Northern Regional was pressing forward with the harassment charge, Northern Regional stated that "they had to charge Plaintiff with something."  (Id. at ¶18).[2]

Galligani filed an application for Accelerated Rehabilitative Disposition ("ARD") on December 17, 2008 to address the pending harassment charge.  While initially agreeing to proceed through the ARD program, Galligani ultimately decided to withdraw his application, appearing pro se before the Honorable Gregory Snyder at an ARD acceptance hearing, and withdrawing his plea. Galligani alleges that the York County District Attorney abandoned the charge against him on October 20, 2009, by entering a *nol pros*.

---

[2] Galligani does not identify the speaker, other than a general reference to "Northern Regional."

## II.   <u>Discussion</u>

To succeed in a claim for malicious prosecution under 28 U.S.C. § 1983, a plaintiff must prove five elements: (1) that the defendant initiated a criminal proceeding; (2) that the criminal proceeding ended in favor of the plaintiff; (3) that the defendant initiated the proceeding in the absence of probable cause; (4) that the defendant acted maliciously, or for a purpose other than bringing the plaintiff to justice; and (5) that the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  <u>Johnson v. Knorr</u>, 477 F.3d 75, 81-82 (3d Cir. 2007).  Galligani has also alleged that Northern Regional is liable for instituting a policy or custom that lead to his malicious prosecution, pursuant to <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978).  In her Report and Recommendation, Magistrate Judge Methvin recognized that the first and fifth elements of the plaintiff's claim had easily been satisfied, but that Galligani failed to make a *prima facie* showing of elements two, three, and four.  The court will adopt Judge Methvin's Recommendation, but on alternative grounds.

### A.   **Malicious Prosecution**

Galligani filed objections to Magistrate Judge Methvin's recommendation that his claim be dismissed for failing to meet the second, third, and fourth elements of a malicious prosecution claim.  The court will address them *seriatim*.

5

i.      *Favorable Termination*

The Third Circuit has identified six means by which criminal proceedings may end "favorably" for a defendant, for purposes of a later malicious prosecution action.  Most relevant to this matter, the "formal abandonment" of criminal charges by the public prosecutor can constitute a favorable termination of proceedings.  See Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996) (citing RESTATEMENT (SECOND) OF TORTS § 659 (1976)).[3]  In her Report and Recommendation, Magistrate Judge Methvin reasoned that, because the charges against Galligani were terminated via *nolle prosequi* and he paid $692.84 in court costs and dismissal fees, he has failed to make out a *prima facie* case that the criminal proceedings against him ended with a "favorable termination."  The court disagrees with Magistrate Judge Methvin's analysis.

Actual innocence – not simply dismissal of charges – is required for a malicious prosecution claim to proceed.  Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002).  A *nolle prosequi* is the "usual method" by which a prosecutor formally abandons criminal proceedings against a defendant, but "signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused."  See id. (internal citation and quotation omitted).  Of course, a prosecutor may *nol pros* charges against a defendant for

---

[3] The other ways in which a criminal proceeding may terminate favorably for a plaintiff are: a discharge by a magistrate at a preliminary hearing; a grand jury's refusal to indict; the quashing of an indictment or information; a final order in favor of the accused by a trial or appellate court; and, of course, an acquittal.  Id.

reasons *other* than that the defendant is actually innocent – for example, if the accused agrees to enter an Accelerated Rehabilitative Disposition ("ARD") program.  See Hilfirty, 91 F.3d at 575-77.  The pertinent inquiry is whether the charges against Galligani were *nol prossed* pursuant to "an agreement of compromise" that would leave open the question of actual innocence.  Id. at 580 (quoting  RESTATEMENT (SECOND) OF TORTS § 660).

In the instant matter, Galligani alleges that while he considered entry into an ARD program and even entered an appearance of ARD application, he ultimately decided not to proceed with the offer and to maintain his innocence, withdrawing his ARD acceptance on July 29, 2009.  (Complaint, Doc. 59, at 5).  Notwithstanding his withdrawal of the ARD acceptance, Galligani avers that the District Attorney dropped the charges against him on October 20, 2009.  He does not allege any compromise agreement or acceptance of responsibility bargained for in exchange for the *nol pros*.  Recognizing that for purposes of a motion to dismiss, the court must accept all of Galligani's well-pleaded factual allegations as true, see Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009), Galligani has alleged that the charges against him were terminated via *nol pros* without any agreement of compromise between himself and the prosecutor.  These allegations sufficiently state a *prima facie* claim that the criminal proceedings against him terminated in his favor.  The court therefore declines to adopt Magistrate Judge Methvin's analysis on this element.

*ii.    Probable Cause*

The third element of a malicious prosecution claim under § 1983 requires the plaintiff to show that the defendant initiated criminal proceedings in the absence of probable cause.  Timing is critical to comprehension of Galligani's claim that Northern Regional lacked probable cause to initiate criminal proceedings against him, and so a brief review of the warrants in this case is in order.

Two separate search warrants were issued.  Responding to a rape report made by Galligani's estranged wife Jennifer Galligani on January 31, 2008, the York Area Regional Police Department ("YARPD") applied for a search warrant on February 8, 2008.  A magisterial district judge issued the warrant on February 9, 2008, giving authority to search Galligani's residence on Oakridge Drive in York for "blankets, sheets, pillow cases and any other miscellaneous items deemed to be related to a sexual assault."  (Application for Search Warrant, Doc. 64-3).  This warrant states that it was to be served no later than 3:30 p.m. on February 11, 2008, and Galligani alleges that it was served February 9, 2008.

Northern Regional also obtained a search warrant.  Officer Baker's affidavit of probable cause for this warrant relays charges of harassment and stalking derived from a February 7, 2008 complaint by Jennifer Galligani.  (Application for Search Warrant, Doc. 62-1, Ex. C).  These charges alleged that Galligani was surreptitiously recording conversations with Jennifer, following Jennifer, and monitoring the presence of her car at her place of employment and calling her to

8

inquire as to her whereabouts when the car was missing.  Jennifer stated that

Galligani repeatedly accused her of infidelity, including a tryst with one of her

nursing patients.  She further stated that Galligani showed up to her place of work

and demanded a tour, only to accuse her of attempting to hide her infidelity with a

coworker.  (Id.)  She also advised that she had caught Galligani stealing her

undergarments while in her home for a custody exchange of their daughter, and

that he had made comments to her that she interpreted as threatening.  (Id.)[4]

Baker's affidavit was completed, and the warrant was authorized, on February 10,

2008.  The warrant not reflect the date on which it was served.  Defendants claim

that both warrants were served on February 11, 2008.

     Galligani alleges that YARPD officers searched his house on February 9, not

on February 11, and were accompanied by Officer Baker, who illegally seized a

laptop, Blackberry, and a number of notebooks and files.  These seizures were

improper, Galligani argues, because the only warrant existing as of February 9,

2008, was the YARPD warrant, which was limited to "blankets, sheets, pillow cases

and any other miscellaneous items deemed to be related to a sexual assault."

Accordingly, Galligani contends that Baker's seizures exceeded the scope of the

warrant in violation of the Fourth Amendment.

---

[4] Specifically, Jennifer told Officer Baker that, while at his house for a custody
exchange, Galligani had a knife on the kitchen counter and placed his hand on it,
stating "you know what this is for, right?"  Jennifer also claimed that Galligani had
informed her he had recently purchased a firearm.  (Id.)

If execution of the YARPD warrant occurred on February 9 and the Northern Regional warrant was not authorized until February 10, then it remains *possible* that Northern Regional actually based their decision to initiate charges on illegally seized evidence, rather than the February 7 complaint.  Reliance on the warrant, so the argument goes, would therefore be objectively and subjectively unreasonable because it was based on illegally seized evidence.  Properly understood, then, the issue is this: assuming *arguendo* that the search occurred on February 9, rather than on February 11, and that Officer Baker seized evidence that was beyond the scope of the YARPD warrant, does this seizure taint the Northern Regional warrant such that Galligani has made a *prima facie* showing that criminal proceedings were initiated against him without probable cause?

The court finds Officer Baker's purported seizure was not improper.  The applicable framework for examining the propriety of Baker's conduct is the independent source doctrine.  In <u>Murray v. United States</u>, 487 U.S. 533, 535-36 (1988), federal agents executed a warrantless entry of a warehouse and, once inside, observed a number of burlap-wrapped bales in plain view.  Without disturbing the bales, the officers left the building and obtained a search warrant.  Importantly, the officers did not rely upon – indeed, did not even mention – the illegal entry in their affidavit for a search warrant, instead relying upon independently derived evidence to support the application.  The warrant issued, the bales were seized, and a plurality of the Supreme Court ultimately upheld the admissibility of the evidence,

holding that "[t]he ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue . . . ." Id.

Here, regardless of the timing of Officer Baker's actions relative to his application for a warrant, Baker's alleged seizure of Galligani's property was valid. First, Galligani concedes that Baker's seizure was within the scope of the second warrant. (See Brief in Support of Objections to the Report and Recommendation, Doc. 71, at 12 (acknowledging that either the February 7 complaint or Officer Baker's seizure could have been the basis for the warrant, and that therefore reliance on the warrant "*may* have been" unreasonable) (emphasis added)). More importantly, Northern Regional's application for the search warrant did not rely at all on the February 9 seizure – indeed, it does not even mention it. Rather, Officer Baker's affidavit in support relies entirely on Jennifer's February 7 complaint. The lengthy and detailed affidavit relays a number of accusations levied against Galligani by Jennifer, which in the aggregate are more than sufficient to establish an independent source of probable cause to seize Galligani's property. It is of no moment that Officer Baker "seized" Galligani's property rather than merely discovering it in a "search." See United States v. Herrold, 962 F.2d 1131, 1143 (3d Cir. 1992) (noting that, under the independent source doctrine, "'reseizure of tangible evidence already seized' is permissible '[s]o long as the later, lawful seizure is genuinely independent of an earlier tainted one.'" (quoting Murray, 487 U.S. at

541-42)).  The court concludes that Galligani's argument that Officer Baker's seizure was unsupported by the warrant is without merit.

Having determined that Officer Baker's seizure was supported by the second warrant, the court now turns to the question of whether that warrant establishes probable cause.  The existence of probable cause is determined by examining the "totality of the circumstances" and adopting a "common sense" approach.  Illinois v. Gates, 462 U.S. 213, 241 (1983).  Probable cause "requires more than mere suspicion," Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)), and exists when there is a "'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789-90 (3d Cir. 2000).  Probable cause exists if, "'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'"  Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

The plaintiff in a malicious prosecution action bears the burden of proving lack of probable cause.  Basile v. Township of Smith, 752 F. Supp. 2d 643, 665 (W.D. Pa. 2010).  In order to successfully challenge a warrant for lack of probable cause, Galligani must show that the warrant was obtained by making false statements or omissions "knowingly and deliberately, or with reckless regard for the truth," and

12

that these falsehoods or omissions were material to the determination of probable cause.  Wilson, 212 F.3d at 787-90; see also Lincoln v. Hanshaw, 375 Fed. App'x. 185, 188-89 (3d Cir. 2010) (noting that a plaintiff bringing a malicious prosecution claim must show either that the proceedings against them were initiated without probable cause, or that the defendant "recklessly disregarded the truth in their warrant application *and* that a warrant application based on what [defendants] should have told the judge would have lacked probable cause") (emphasis and alterations in original).

Galligani does not allege that Officer Baker made any false statements in his affidavit of probable cause.  Rather, Galligani alleges that Baker and Northern Regional continued to proceed with charges against Galligani even after becoming aware that his wife recanted her rape allegation, the rape kit came back negative, Galligani passed a polygraph test, and YARPD decided not to pursue rape charges. These allegations – even if true – have no impact on the charges filed by Northern Regional.  Northern Regional's charges were premised on entirely separate and distinct allegations against Galligani – allegations which Galligani has not challenged – detailed in Officer Baker's affidavit.  Galligani goes to great length to link the charges and search warrant pursued by Northern Regional with the ultimately unsubstantiated rape allegations pursued by YARPD, but the reality is that Northern Regional pursued separate charges based on separate evidence, and the two investigations were only tangentially connected.  That YARPD declined to

pursue rape charges in no way suggests a lack of probable cause that Galligani had committed the offenses Northern Regional pursued.  Galligani has therefore failed to make a *prima facie* showing that Northern Regional pursued charges against him without probable cause.

    *iii.*    *Malice*

The fourth element Galligani must show to make out a *prima facie* malicious prosecution claim is that "the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice."  <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996).  Malice means that the defendant acted either with "ill will in the sense of spite, lack of belief . . . in the propriety of the prosecution, or . . . for an extraneous improper purpose."  <u>Lee v. Mihalich</u>, 847 F.2d 66, 70 (3d Cir. 1988); <u>see also</u> <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d Cir. 1993) ("Malice may be inferred from the absence of probable cause.").

In her Report and Recommendation, Magistrate Judge Methvin identified the single allegation that Galligani puts forth to support this element of his claim. Galligani alleges that, at the December 2, 2008 hearing before Magisterial Judge Shoemaker, when asked by Judge Shoemaker why they were proceeding with the remaining harassment charge, "Northern Regional stated *in the presence of Judge Shoemaker that they had to charge Plaintiff with something*."  (<u>See</u> Doc. 59, ¶ 18(b)) (emphasis in original).  Magistrate Judge Methvin also observed that Galligani does not identify the speaker, other than to say that it was "Northern Regional."

Assuming that the individual who made this statement was a representative of Northern Regional (a police department) and not a prosecutor, Judge Methvin concluded that Galligani's characterization of it as malicious was nothing more than a "bald assertion" insufficient to establish a *prima facie* case. (See Doc. 70, at 20; see also id. (this statement "could indicate nothing more than that Northern Regional did not feel it appropriate to dismiss all charges solely on the basis of a retraction of domestic abuse by a spouse")).

The court agrees with Magistrate Judge Methvin's analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that the plaintiff has plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Critically, well-plead facts that are "merely consistent with" a defendant's liability "stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

Galligani argues strenuously that it is plausible that this statement indicates Northern Regional's "ill will" against him. To impute to the defendants a willful intent to proceed on a meritless prosecutorial crusade against Galligani based on a single, offhand statement, unattributed to any particular individual, fails to cross

the threshold to a establish that Galligani is plausibly entitled to relief.  For that reason, the court will adopt Magistrate Judge Methvin's analysis on this element.

### B.    Galligani's <u>Monell</u> Claim

Although municipalities may not be held liable for the acts of their employees on a theory of *respondeat superior* liability, the Supreme Court has held that "Congress *did* intend municipalities and other local government entities to be included among those persons to whom § 1983 applies." <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 690 (1978).  "A public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially promulgated by those whose acts may fairly be said to represent official policy." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 144 (3d Cir. 1997).  Of course, a necessary predicate to a <u>Monell</u> claim is that the plaintiff *actually was* deprived of a constitutional right. See <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1149 (3d Cir. 1995) ("In order to prove a section 1983 claim, a plaintiff must show that he or she was deprived of a constitutional right.").  Here, because Galligani has failed to allege facts that would support his malicious prosecution claim, he has failed to establish that he was deprived of a constitutional right.  Accordingly, his <u>Monell</u> claim must be dismissed.

**III.**   **<u>Conclusion</u>**

For the aforementioned reasons, the court will adopt the Recommendation of

Magistrate Judge Methvin, and grant defendants motion to dismiss with prejudice.

An appropriate order will issue.

  <u>S/ Christopher C. Conner</u>    
CHRISTOPHER C. CONNER
United States District Judge

Dated:        October 31, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **CESAR GALLIGANI,** | : | **Civil Action No. 1:10-CV-1136** |
| **Plaintiff,** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **NORTHERN YORK COUNTY** | : | |
| **REGIONAL POLICE** | : | |
| **DEPARTMENT, and** | : | |
| **OFFICER MARK BAKER,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 31st day of October, 2012, upon consideration of the Report

and Recommendation of Magistrate Judge Methvin (Doc. 70), and Defendants'

Motion to Dismiss (Doc. 61), and for the reasons articulated in the accompanying

Memorandum, it is hereby ORDERED that:

1. Magistrate Judge Methvin's Report is ADOPTED in part and REJECTED in part, and Magistrate Judge Methvin's Recommendation is ADOPTED.

2. Defendants Northern York County Regional Police Department and Officer Mark Baker's Motion to Dismiss (Doc. 61) is GRANTED.

3. The Clerk of Court is directed to close the case.


   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge